UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION


JON S.,[1]

             Plaintiff,

      v.

COMMISSIONER, SOCIAL SECURITY
ADMINISTRATION,

             Defendant.

Case No. 6:20-cv-01023-YY

OPINION AND ORDER


YOU, Magistrate Judge:

Plaintiff Jon S. seeks judicial review of the final decision by the Commissioner of Social Security ("Commissioner") denying his application for Supplemental Security Income ("SSI") disability benefits under Title XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 1381-1383f. This court has jurisdiction to review the Commissioner's final decision pursuant to 42 U.S.C. §§ 405(g) and 1383(g)(3).[2]  For the reasons set forth below, that decision is AFFIRMED.

---

[1] In the interest of privacy, the court uses only plaintiff's first name and the first initial of his last name.  Where applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

[2] The parties have consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636(c).

## PROCEDURAL HISTORY

Plaintiff protectively filed for SSI on May 5, 2017, alleging disability beginning on January 7, 2007.  Tr. 191-95.  His application was initially denied on August 10, 2017, and upon reconsideration on December 8, 2017.  Tr. 108-20, 125-27.  Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), which took place on May 29, 2019.  Tr. 36-77.  After receiving testimony from plaintiff and a vocational expert, the ALJ issued a decision on July 3, 2019, finding plaintiff not disabled within the meaning of the Act.  Tr. 12-35.  The Appeals Council denied plaintiff's request for review on April 28, 2020.  Tr. 188-90, 1-6.  Therefore, the ALJ's decision is the Commissioner's final decision and subject to review by this court.  20 C.F.R. § 416.1481.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record.  42 U.S.C. § 405(g); *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007).  This court must weigh the evidence that supports and detracts from the ALJ's conclusion and "'may not affirm simply by isolating a specific quantum of supporting evidence.'"  *Garrison v. Colvin*, 759 F.3d 995, 1009-10 (9th Cir. 2014) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007)).  This court may not substitute its judgment for that of the Commissioner when the evidence can reasonably support either affirming or reversing the decision.  *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007).  Instead, where the evidence is susceptible to more than one rational interpretation, the Commissioner's decision must be upheld if it is "supported by inferences reasonably drawn from the record."  *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citation omitted); *see also Lingenfelter*, 504 F.3d at 1035.

## SEQUENTIAL ANALYSIS AND ALJ FINDINGS

Disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The ALJ engages in a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. § 416.920; *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006) (discussing *Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999)).

At step one, the ALJ found plaintiff had not engaged in substantial gainful activity since his amended alleged onset date of May 5, 2017. Tr. 17. At step two, the ALJ determined plaintiff suffered from the following severe impairments: degenerative disc disease, depression, left shoulder impingement, anxiety, and peripheral neuropathy. Tr. 17. The ALJ recognized other impairments in the record, i.e., irritable bowel syndrome, lactose intolerance, and obesity, but concluded these conditions to be non-severe. Tr. 18. The ALJ also addressed alleged impairments, including chronic fatigue syndrome, arthritis of the hands, and fibromyalgia, but concluded these impairments were not medically determinable due to a lack of medical evidence in the record. Tr. 18.

The ALJ found plaintiff's neurological and mental impairments, considered singly or in combination, did not meet or medically equal the criteria of listings in 12.04 and 12.06. Tr. 19. Regarding the mental impairment finding, the ALJ considered the four broad areas of mental functioning, known as the "paragraph B" criteria, used to evaluate mental disorders and the serious and persistent criteria, known as the "paragraph C" criteria. Tr. 16-17; 20 C.F.R. Part 404, Subpt. P, App. 1, 12.00.

At step three, the ALJ found plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment.  Tr. 18.  The ALJ next assessed plaintiff's residual functional capacity ("RFC") and determined he could perform light work as defined in 20 C.F.R. § 416.967(b) except he can occasionally climb ladders, ropes, and scaffolds; he can occasionally crawl; he can occasionally reach overhead with the left, non-dominant upper extremity; he can tolerate occasional exposure to workplace hazards such as unprotected heights and exposed, moving mechanical machinery; he can perform simple, routine tasks and can tolerate occasional contact with coworkers and the general public.  Tr. 21.

At step four, the ALJ found plaintiff was unable to perform any past relevant work.  Tr. 27.

At step five, the ALJ found that considering plaintiff's age, education, work experience, and RFC, he could perform jobs that existed in significant numbers in the national economy including: bench assembler, garment sorter, and food sorter.  Tr. 27-28.  Thus, the ALJ concluded plaintiff was not disabled at any time from May 5, 2017, through the date of the ALJ's decision on July 3, 2019.  Tr. 28.

## DISCUSSION

Plaintiff argues the ALJ erred by: (1) improperly rejecting his subjective symptom testimony; (2) improperly rejecting lay witness testimony; and (3) improperly rejecting the medical opinions of Pamela Roman, Ph.D., Jeremy Jensen, M.A., and Jocelyn Bonner, M.D.

## I.    Subjective Symptom Testimony

When a claimant has medically documented impairments that could reasonably be expected to produce some degree of the symptoms complained of, and the record contains no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the

severity of . . . symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996) (citation omitted). A general assertion that the claimant is not credible is insufficient; the ALJ must "state which . . . testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). The proffered reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (internal citation omitted). If the "ALJ's credibility finding is supported by substantial evidence in the record, [the court] may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (citation omitted).

Effective March 28, 2016, the Commissioner superseded Social Security Ruling ("SSR") 96-7p, governing the assessment of a claimant's "credibility," and replaced it with SSR 16-3p. *See* SSR 16-3p, *available at* 2016 WL 1119029. SSR 16-3p eliminates the reference to "credibility," clarifies that "subjective symptom evaluation is not an examination of an individual's character," and requires the ALJ to consider all the evidence in an individual's record when evaluating the intensity and persistence of symptoms. *Id.* at *1-2. The ALJ must examine "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.* at *4.

Here, the ALJ found plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms" and did not identify evidence of malingering. Tr. 22. However, the ALJ concluded plaintiff's "statements concerning the intensity, persistence

and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." Tr. 22.

### A.    Objective Medical Evidence

Plaintiff argues the ALJ improperly rejected his subjective symptom testimony by failing to identify specific, clear and convincing reasons supported by substantial evidence in the record and instead merely "selectively summarized objective medical findings to reject" his testimony. Pl. Br. 5-8.

In evaluating a claimant's subjective symptom testimony, an ALJ may consider whether it is supported by objective medical evidence. 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2); SSR 16-3p, *available at* 2017 WL 5180304, at *5 ("objective medical evidence is a useful indicator to help make reasonable conclusions about the intensity and persistence of symptoms"). However, "[a]n ALJ does not provide specific, clear, and convincing reasons for rejecting a claimant's testimony by simply reciting the medical evidence in support of his or her residual functional capacity determination." *Brown-Hunter v. Colvin*, 806 F. 3d 487, 489 (9th Cir. 2015). Instead, "the ALJ must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony. " *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001); *see also Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (holding the reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discount the claimant's testimony").

Here, with respect to plaintiff's physical impairments, the ALJ cited extensively to instances in the medical record that were not "entirely consistent" with plaintiff's statements concerning the intensity, persistence and limiting effects of these symptoms. Tr. 22. Namely, the ALJ noted an early diabetic exam from October 2016, which found decreased sensation in

plaintiff's bilateral toes, with later exams finding decreased temperature sensation on the left. The ALJ contrasted this exam finding with plaintiff's reports of "getting numbness only when it is cold outside, and his last AlC was 6.00." Tr. 22. Additionally, the ALJ noted that although plaintiff "complained of feet, knee, thoracic spine, cervical spine, and shoulder pain in January 2017, physical examination was unremarkable and thoracic spine x-ray was normal[]." Tr. 22 (citing Tr. 79-91).

The ALJ further cited to a report from Dr. Davey considering a thoracic spine x-ray from 2015. Dr. Davey acknowledged multilevel endplate spurring without disc space narrowing and noted no significant abnormalities. Tr. 22. The ALJ noted plaintiff was under pain management with Percocet in 2017 with good results. Tr. 22. The ALJ also cited a face-to-face interview with Dr. Davey where plaintiff displayed no difficulty walking, sitting, standing, or using his hands. Tr. 22. With respect to plaintiff's shoulder issues, the ALJ noted "imaging demonstrated no impairment and the claimant was discharged from physical therapy in 2015 for these issues[]." Tr. 22 (citing Tr. 93-107). In reviewing the medical evidence, the ALJ noted plaintiff "has not had any further evaluation or treatment for his left shoulder impairment since the State agency evaluations." Tr. 22-23.

The ALJ also specifically addressed plaintiff's type II diabetes mellitus and diabetic neuropathy. The ALJ noted "[s]ample three-month average blood glucose levels, or AlC, include 1.9 in October 2018." Tr. 23 (citing Tr. 658). The ALJ observed that "[c]onsistent with these numbers, [plaintiff's] care providers consider his diabetes well controlled on metformin. Tr. 23 (citing Tr. 591).

Further, the ALJ addressed plaintiff's neuropathy, noting he ambulates without discomfort with the use of orthotic shoes. Tr. 23 (citing Tr. 801). Additionally, the ALJ found

plaintiff's allegations regarding lower extremity edema and needing to elevate his feet were not supported by the medical evidence of record or by the opinion evidence. Specifically, the ALJ noted that "although [plaintiff] has reported noticing mild edema on reviews of systems, he has not presented with edema on physical examinations[]." Tr. 23 (citing Tr. 375-76, 587, 591, 607, 617, 661, 915). The ALJ concluded the limitations set forth in plaintiff's RFC gave adequate weight to plaintiff's allegations that were supported by the medical record. Tr. 27.

With respect to plaintiff's mental impairments, the ALJ cited extensively to the record. Specifically, the ALJ noted plaintiff's history of bipolar disorder with relationship problems including domestic violence. Tr. 24. The ALJ contrasted this finding with 2017 mental status exams that were within normal limits. Tr. 24. The ALJ also cited to an emergency room visit where plaintiff reported "experiencing a manic phase for six weeks, and reporting behavior changes such as being hyperactive." Tr. 24. The ALJ contrasted that testimony with the emergency room report that showed "his mood and affect were normal, his judgement was intact, and he denied suicidal ideation." Tr. 24. The ALJ further noted another emergency room visit for the same issues shortly after the first visit. At this visit, plaintiff "denied impulsivity, suicidal ideation, violence, or legal issues. He presented with normal mood, affect, and behavior, and he was not admitted for treatment." Tr. 24.

The ALJ also noted a follow-up appointment where the plaintiff "endorsed mood swings, flights of ideas, and switching topics rapidly. He presented as very intelligent, charismatic, and funny. Mental status exam found expansive affect, circumstantial thought process, rambling speech, and decreased concentration, but intact memory and normal appearance[]." Tr. 24 (citing Tr. 79-91). The ALJ observed the inconsistency between plaintiff's complaints of manic behavior and the "doctor[']s note that he does not seem to have any impulse control issues, flight

of ideas, or any psychotic symptoms.  His mood, affect, and behavior are all normal[.]"  Tr. 24.

The ALJ also noted plaintiff was relatively stable on his current medication regime.  Tr. 24.

Thus, by specifically identifying the testimony that was inconsistent with the objective

medical evidence, the ALJ provided specific, clear, and convincing reasons for rejecting

plaintiff's subjective symptom testimony.

### B.    Other Evidence

While the ALJ properly rejected plaintiff's subjective symptom testimony based on a lack

of objective medical evidence, that may not form the sole basis for discounting a claimant's

testimony.  *Tammy S. v. Comm'r Soc. Sec. Admin.*, No. 6:17-cv-01562-HZ, 2018 WL 5924505,

at *4 (D. Or. Nov. 10, 2018) (citing *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) ("[T]he

Commissioner may not discredit [a] claimant's testimony as to the severity of symptoms merely

because they are unsupported by objective medical evidence.")); 20 C.F.R. § 404.1529(c)(2) (in

evaluating an social security disability insurance claim, the Commissioner "will not reject your

statements about the intensity and persistence of your pain or other symptoms or about the effect

your symptoms have on your ability to work solely because the available objective medical

evidence does not substantiate your statements."); 20 C.F.R. § 416.929(c)(2) (same for

supplemental security income claims).

As noted, the ALJ must "examine the entire case record."  SSR 16-3p, *available at* 2016

WL 1119029, at *4.  Pursuant to regulations, the Commissioner considers "other evidence,"

including the claimant's statements and "any other information" the claimant provides regarding

symptoms.  20 C.F.R. § 404.1529(c)(3) (indicating the Commissioner is to consider "other

evidence" regarding the claimant's symptoms); 20 C.F.R. § 416.929(c)(3) (same); SSR 16-3p,

*available at* 2017 WL 5180304, at *5-9.  "Factors relevant to [a claimant's] symptoms, such as

pain" include (i) daily activities, (ii) the location, duration, frequency, and intensity of pain or symptoms, (iii) precipitating and aggravating factors, (iv) the type, dosage, effectiveness, and side effects of medication, (v) treatment, other than medication, (vi) measures the claimant took to alleviate symptoms, and (vii) other factors concerning functional limitations and restrictions due to pain or other symptoms.  20 C.F.R. §§ 404.1529(c)(3)(i)-(vii), 416.929(c)(3)(i)-(vii).

Here, the ALJ found that plaintiff's subjective symptom testimony was inconsistent with his activities of daily living.  Tr. 18-20.  An ALJ may invoke activities of daily living in the context of discrediting subjective symptom testimony to (1) illustrate a contradiction in previous testimony, or (2) demonstrate that the activities meet the threshold for transferable work skills. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007).

With respect to plaintiff's neuropathy, the ALJ noted the inconsistency between plaintiff "apparently [] suffering from neuropathy for years" and the fact that his "related symptoms did not prevent him from successfully taking full or partial course loads from [Lane Community College] from [S]ummer 2013 to Fall 2016[]."  Tr. 23 (citing Tr. 204-12, 652).  With respect to plaintiff's mental impairments, the ALJ contrasted plaintiff's alleged issues interacting with others with his reports that he drives his partner to work, shops in stores for groceries, and has coffee with a friend once a month.  Tr. 19.  The ALJ also cited to an inconsistency between plaintiff's alleged inability to pay attention for more than twenty seconds with reports that he is able to "prepare meals for himself and his partner on a daily basis" and "spends about six hours a day on the computer reading the news and playing video games[]."  Tr. 20 (citing Tr. 825). Additionally, the ALJ noted an inconsistency between plaintiff's alleged issue with handling stress and changes in routine and his mostly successful completion of a full course load from

Lane Community College from Summer 2013 to Fall 2016 and his ability to care for his disabled girlfriend and a pet.  Tr. 20.

The ALJ properly rejected plaintiff's subjective symptom testimony based on contradictions with his activities of daily living.  *See Orn*, 495 F.3d at 639.  In sum, the ALJ did not err in rejecting plaintiff's subjective symptom testimony.

## II.    Lay Witness Testimony

Plaintiff argues the ALJ erred in failing to consider the lay witness statement of his partner.  Pl. Br. 10.  Plaintiff's partner reported plaintiff's mood cycling made it impossible for him to be reliable in a work setting and affected his ability to concentrate.  Tr. 234.  She also reported that plaintiff experienced panic attacks and had difficulty leaving the house due to anticipated panic.  Tr. 234.  Further, according to plaintiff's partner, plaintiff suffered from chronic pain and his medications were sedating and muddled his thinking.  Tr. 235.  Finally, plaintiff's partner acknowledged that plaintiff prepared meals and was able to help with shopping.  Tr. 228-29.

The ALJ did not mention plaintiff's partner's statements in his decision.  See Tr. 15-29. For claims filed on or after March 27, 2017, new regulations provide that ALJs are "not required to articulate how [they] considered evidence from nonmedical sources."  20 C.F.R. §§ 404.1520c(d), 416.920c(d).  Consequently, there is an argument that ALJs are no longer required to provide reasons to reject lay witness testimony.  *See Wendy J.C. v. Saul*, No. 3:19-cv-01434-AC, 2020 WL 6161402, at *13 n.9 (D. Or. October 21, 2020) ("The new regulations provide the ALJ is 'not required to articulate how [they] considered evidence from nonmedical sources . . . . ' 20 C.F.R. §§ 404.1520c(d) (2019), 416.920c(d).  As such, the ALJ is no longer required to provide reasons germane to lay witnesses to reject their testimony.") (alterations in original).

However, at least one case in this district has held that the articulation requirement remains. *See Tanya L. L. v. Comm'r Soc. Sec. Admin.*, No. 3:20-CV-00078-BR, 2021 WL 981492, at *7 (D. Or. Mar. 16, 2021) (finding that that § 404.1520c(d) "do[es] not eliminate the need for the ALJ to articulate his assessment of the lay-witness statements").

Here, while the ALJ did not discuss plaintiff's partner's statements, they were similar to plaintiff's own subjective complaints. *Compare* Tr. 226-39 *and* Tr. 36-77, 191-95, 216-25, 259-67. As discussed above, the ALJ gave clear and convincing reasons supported by substantial evidence in the record to discount plaintiff's subjective complaints and, by extension, plaintiff's partner's testimony regarding plaintiff's complaints. Therefore, any error by the ALJ in failing to specifically discuss the testimony of plaintiff's partner is harmless. *See Molina*, 674 F.3d at 1122 (holding that "[w]here lay witness testimony does not describe any limitations not already described by the claimant, and the ALJ's well-supported reasons for rejecting the claimant's testimony apply equally well to the lay witness testimony," the failure to address the lay testimony may be deemed harmless).

## III.    Medical Opinion Evidence

Plaintiff filed his application for benefits on May 5, 2017. Under the new regulations, effective for claims filed on or after March 27, 2016, ALJs no longer "weigh" medical opinions, but rather determine which are most "persuasive." 20 C.F.R. §§ 404.1520c(a)-(b), 416.920c(a)-(b). To that end, controlling weight is no longer given to any medical opinion. *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844, 5867-68 (available at 2017 WL 168819); *see also* 20 C.F.R. §§ 404.1520c(a), 416.920c(a).

Instead, the Commissioner evaluates the persuasiveness of all medical opinions based on (1) supportability, (2) consistency, (3) relationship with the claimant, (4) specialization, and (5)

other factors, such as "evidence showing a medical source has familiarity with the other evidence

in the claim or an understanding of our disability program's policies and evidentiary

requirements." 20 C.F.R. §§ 404.1520c(a), (c)(1)-(5), 416.920c(a), (c)(1)-(5). The factors of

"supportability" and "consistency" are considered to be "the most important factors" in the

evaluation process. 20 C.F.R. §§ 404.1520c(c), 416.920c(c).

      The new regulations require an ALJ to articulate how persuasive the ALJ finds the

medical opinions and to explain how the ALJ considered the supportability and consistency

factors. 20 C.F.R. §§ 404.1520c(a), (b), 416.920c(a), (b); *see Tyrone W. v. Saul*, No. 3:19-CV-

01719-IM, 2020 WL 6363839, at *7 (D. Or. Oct. 28, 2020). "The ALJ may but is not required to

explain how other factors were considered, as appropriate, including relationship with the

claimant (length, purpose, and extent of treatment relationship; frequency of examination);

whether there is an examining relationship; specialization; and other factors, such as familiarity

with other evidence in the claim file or understanding of the Social Security disability program's

policies and evidentiary requirements." *Linda F. v. Comm'r Soc. Sec. Admin.*, No. C20-5076-

MAT, 2020 WL 6544628, at *2 (W.D. Wash. Nov. 6, 2020). However, ALJs are required to

explain "how they considered other secondary medical factors [if] they find that two or more

medical opinions about the same issue are equally supported and consistent with the record but

not identical." *Tyrone*, 2020 WL 6363839, at *6 (citing 20 C.F.R. §§ 404.1520c(b)(2) and

404.1520c(b)(3)).

      The court must continue to consider whether the ALJ's decision is supported by

substantial evidence. *See Revisions to Rules*, 82 Fed. Reg. at 5852 ("Courts reviewing claims

under our current rules have focused more on whether we sufficiently articulated the weight we

gave treating source opinions, rather than on whether substantial evidence supports our final decision."); *see also* 42 U.S.C. § 405(g).

**A.      Dr. Roman**

On May 13, 2019, Pamela Roman, Ph.D., conducted a complete consultative psychodiagnostic evaluation of plaintiff.  Tr. 823-34.  Dr. Roman diagnosed plaintiff with moderate bipolar I disorder, posttraumatic stress disorder, and child physical abuse.  Tr. 24, 828.  Plaintiff's chief complaints were difficulty getting along with others, racing thoughts, and inability to focus.  Tr. 24, 826.  Dr. Roman noted that plaintiff was relatively stable on his current medication regime, but that during periods of extreme mania or depression he would be more unreliable.  Tr. 24, 828.  Dr. Roman opined plaintiff had a "marked limitation in ability to interact appropriately with the public, supervisors, and coworkers, with moderate limitation in ability to respond appropriately to usual work situations and to changes in a routine work setting[.]"  Tr. 24, 832.

The ALJ was "not persuaded by Dr. Roman's opinion in this regard."  Tr. 25.  Specifically, the ALJ found Dr. Roman's opinion was "poorly supported and inconsistent with the record as a whole."  Tr. 25.  In particular, the ALJ noted that Dr. Roman relied on plaintiff's self-reports of an instance of rage that occurred in 2013; however, this occurred approximately four years before the SSI application date.  Tr. 25.  The ALJ also observed that Dr. Roman relied on plaintiff's statement that he would panic and make a scene; however, plaintiff could provide only one example of this.  Tr. 25.  "In sharp contrast," the ALJ noted, plaintiff's treating and examining sources described him as cooperative and with good eye contact.  Tr. 25 (citing Tr. 371, 377, 383, 389, 395, 401, 407, 413, 419, 425, 432, 439, 541, 548, 555, 562, 568, 576, 703, 710, 717, 725, 733, 741, 749, 757, 845, 861).  The ALJ further observed that plaintiff "was

described as able to express himself well, as answering questions appropriately, with a good sense of humor, and as allowing himself to be interrupted when talking." Tr. 25 (citing Tr. 458, 821).

Thus, the ALJ satisfied the supportability and consistency consideration and articulation requirements. 20 C.F.R. §§ 404.1520c(b), 416.920c(b). Plaintiff cites evidence in support of his argument that his medical record does not contradict Dr. Roman's opinion. Pl. Br. 11-14. While plaintiff argues for a different interpretation of the record, the court must affirm the ALJ's finding because it was reasonable and supported by substantial evidence. *See Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) (variable interpretations of the evidence are insignificant if the ALJ's is reasonable).

### B.    Therapist Jensen

Plaintiff's therapist at the Center for Family Development, Jeremy Jensen, M.A., offered a statement in support of plaintiff's application. Tr. 835-36. Jensen reported plaintiff was attending psychotherapeutic sessions on a weekly basis. Tr. 835. Jensen observed that plaintiff displayed hypomania, depressed mood, pressured speech, intrusive and cycling patterns of negative thought, irritability, significant weight gain and loss, fatigue, difficulty with concentration, somatic and chronic pain complaints, and difficulty showing positive emotion. Tr. 835-36.

The ALJ found Jensen's opinion "is not persuasive" and was "not supported by" and was inconsistent with Jensen's own treatment records. Tr. 25. Specifically, the ALJ observed:

> In stark contrast, the mental status exams of record from the Center for Family Development are grossly normal, showing among other things, the claimant's attention and concentration were almost always unimpaired or grossly intact (Exhibit 6F/3, 7, 11, 20, 26, 32, 38, 44, 50, 56, 62, 68, 74, 81, 88; l0F/3, 9, 16, 23, 30, 36, 44; 15F/26, 33, 40, 48, 56, 64, 72, 80; 20F/5; 23F/8, 24). His thought process was logical and goal directed. His associations were tight. His thought content was

normal with no hallucinations, delusions, phobias, obsessions/compulsions, or ideas of reference. Judgment and insight were adequate (fair on rare occasion) and there was rarely any impulsivity, which, when noted, was no more than mild. Suicidal ideation was usually absent (Exhibit 6F/19-20, 25-26, 31-32, 37-38, 43-44, 49-50, 55-56, 62-63, 68-69, 74-75, 80-81, 87-88; l0F/8-9, 15-16, 22-23, 29-30, 36-37, 43-44; 15F/25-26, 33-34, 40-41, 48-49, 56-57, 64-65, 72-73, 79-80; 23F/8-9, 23-24). The claimant's eye contact was good and his attitude was cooperative (Exhibit 6F/19, 25, 31, 37, 43, 49, 55, 61, 67, 73, 80, 87; l0F/8, 15, 22, 29, 35, 43; 15F/25, 32, 39, 47, 55, 63, 71, 79; 23F/7, 23).

Tr. 25. Additionally, the ALJ noted that Jensen "offered little explanation for his conclusory statement that [plaintiff's] 'symptom presentation presents significant barriers to social engagement'" or "any further assessment on the degree or extent of limitation caused by those unnamed barriers." Tr. 25. The ALJ properly articulated why Jensen's opinion was unsupported by and inconsistent with the medical records. Plaintiff argues for a different interpretation of the record, citing evidence in support of his argument, Pl. Br. 14-16, but the court must affirm the ALJ's finding because it is reasonable and supported by substantial evidence. *See Burch*, 400 F.3d at 679 (variable interpretations of the evidence are insignificant if the ALJ's is reasonable).

### C.    Dr. Bonner

Plaintiff's primary care provider, Jocelyn Bonner, M.D., wrote to say "[i]f hypomanic, [the claimant] is unable to concentrate as his mind is racing, if depressed he is withdrawn and cannot get chores done. He has no motivation. He would be absent 2-3 weeks out of a month." Tr. 837.

The ALJ found the opinion of Dr. Bonner was "not persuasive" as there is "little evidence to support the severity and persistence of hypomania alleged by [plaintiff] or opined by Dr. Bonner." Tr. 26. The ALJ noted that Dr. Bonner did not offer any opinion or information assessing how often plaintiff is hypomanic. Tr. 26. The ALJ further contrasted Dr. Bonner's opinion with medical evidence of record that suggested plaintiff "has stabilized for the most

part" since he was diagnosed with bipolar disorder at the age of 36 and his medications were adjusted. Tr. 26 (citing Tr. 613). Other treatment notes showed "no recent mania" or only mild hypomania. Tr. 26 (citing Tr. 715, 747, 751). The ALJ also observed that plaintiff's self-reported to his care provider at Oregon Medical Group that he had a "crisis" only every six to twelve months. Tr. 26 (citing Tr. 867). The ALJ further noted that although mental status exams reported recent periods of mania, signs of hypomania were not indicated in the exam records. Tr. 26 (citing Tr. 828).

Additionally, the ALJ noted there are "not observations in the treatment records of the symptoms to which the claimant testified as describing his periods of mania." Tr. 26. Furthermore, the ALJ noted plaintiff's speech is almost always normal on mental status exam, and never mute as alleged. Tr. 26 (citing Tr. 355, 359, 363, 372, 378, 384, 390, 396, 402, 408, 414, 420, 426, 433, 440, 704, 711, 719, 727, 735, 743, 750, 758, 846, 862). Poor hygiene was not noted, such as might be observed in an individual who was not showering. Tr. 26 (citing Tr. 371, 377, 383, 389, 395, 401, 407, 413, 425, 431, 438, 540, 547, 554, 561, 568, 575, 702, 710, 717, 725, 733, 741, 749, 756, 845, 861). Nor are there any observed instances of the claimant losing time. Tr. 26.

Thus, the ALJ's finding that plaintiff's medical record is unsupported by and inconsistent with the opinion of Dr. Bonner is supported by substantial evidence. Again, plaintiff argues for a different interpretation of the record, citing evidence in support of his argument that plaintiff's medical record does not contradict Dr. Bonner's opinion. Pl. Br. 16-18. However, the court must affirm the ALJ's finding because it was reasonable and supported by substantial evidence.

**ORDER**

The Commissioner's decision is AFFIRMED.

DATED  November 8, 2021.

/s/ Youlee Yim You
_____
Youlee Yim You
United States Magistrate Judge
